IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LEANDER CALHOUN, #198389,    )
      )
    Plaintiff,    )
      )
v.    )    CIVIL ACTION NO. 2:14-CV-341-MHT
    )    (WO)
      )
ROBERT BENTLEY, et al.,    )
      )
    Defendants.    )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**[1]

**I. INTRODUCTION**

This 42 U.S.C. § 1983 action is pending before the court on an amended complaint filed by Leander Calhoun ("Calhoun"), a state inmate. *Doc No. 18.* In the amended complaint, Calhoun challenges conditions of confinement and actions taken against him during his confinement at the Kilby Correctional Facility.  Calhoun names Governor Robert Bentley; Kim Thomas, the Commissioner of the Alabama Department of Corrections during the period of time relevant to the complaint; and Warden Phyllis Billups and Deputy Warden Carl Clay, both employees of Kilby at the time relevant to the

---

[1]All cited documents and attendant page numbers referenced herein are those assigned by this court in the docketing process.

complaint, as defendants in this cause of action.[2]  Calhoun seeks a declaratory judgment, injunctive relief and any other relief this court deems proper.

The defendants filed a special report and relevant evidentiary materials in support of their report, including affidavits, addressing the claims presented by Calhoun.  In these filings, the defendants deny they acted in violation of Calhoun's constitutional rights.

The court entered an order allowing Calhoun the opportunity to file a response to the report and evidentiary materials submitted by the defendants.  *Doc. No. 30.*  In this order, the Court advised Calhoun that unless "**sufficient legal cause**" is shown within fifteen days of entry of this order "**why such action should not be undertaken**, the court may at any time [after expiration of the time allowed for filing a response] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law."  *Id*. at 2-3.  Calhoun filed a requisite response to this order.  *Doc. No. 31.*

Pursuant to the order directing a response from the plaintiff, the court deems it appropriate to treat the defendants' report as a motion for summary judgment.  Upon

---

[2]Calhoun presents claims against the defendants in both their individual and official capacities.  "[W]hen officials sued in [their official] capacity in federal court die or leave office, their successors automatically assume their roles in the litigation."  *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991).  Thus, with respect to Calhoun's claims against former commissioner Thomas in his official capacity, current commissioner Jefferson Dunn is the appropriate defendant.  As to the personal or individual capacity claims lodged against defendant Thomas, Thomas remains a proper defendant.  *Walton ex rel. R.W. v. Montgomery County Bd. of Educ.*, 371 F. Supp. 2d 1318, 1320 n.1 (M.D. Ala. 2005) (new official substituted for official capacity claim but not for individual capacity claim).

consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint and the plaintiff's response to the report, the court concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [now dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Williamson Oil Company, Inc. v. Phillip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003) (moving party bears the initial burden of establishing there is no

---

[3]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*. "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

genuine dispute as to any material fact); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (same).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by demonstrating that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-324; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (the moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial).

The defendants met their evidentiary burden and the burden therefore shifted to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may … grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.).  This

court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007). In civil actions filed by inmates, federal courts

> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable … or is not significantly probative … summary judgment may be granted." *Anderson*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty*

*Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . ., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is

6

appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists).  At the summary judgment stage, this court must "consider all evidence in the record … [including] pleadings, depositions, interrogatories, affidavits, etc. – and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case. *Liberty Lobby*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing *Liberty Lobby*, *supra*).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts… . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of

material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record.  After such review, the court finds that Calhoun has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III.  ABSOLUTE IMMUNITY

To the extent that Calhoun lodges claims against the defendants in their official capacities and the complaint can be construed to seek monetary damages, the defendants are entitled to absolute immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, … treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).   "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.

Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (damages are unavailable from state official sued in his official capacity).

## IV.  DISCUSSION OF CLAIMS

### A.  Speculative Claims

Calhoun presents claims based on his subjective fear of conditions or actions which could occur during his incarceration at Kilby. However, these claims do not warrant constitutional protection.  Mere allegations that conditions could subsequently result in constitutional violations and/or that prison officials may at some time in the future act unfavorably towards an inmate fail to implicate a constitutionally protected interest. *Conner v. Sticher*, 801 F.2d 1266, 1268 (11th Cir. 1986) (plaintiff's subjective belief harm may occur provides no basis for relief); *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (jurisdiction cannot be premised upon mere speculation); *Carter v. Heard*, 593 F.2d 10 (5th Cir. 1979) (Relief is not warranted when "the injury which [plaintiff's] pleadings

contemplate is fancied, not real; prospective, not actual; and imagined, not threatened.").

Thus, those claims based on possible future adverse action are purely speculative and

without constitutional implication.

### B.  Lack of Standing – Claims Alleged on Behalf of Other Inmates

Standing is a cornerstone of American jurisprudence on which jurisdiction depends.

"[A] litigant may only assert his own constitutional rights or immunities." *McGowan v.*

*Maryland*, 366 U.S. 420, 429 (1961), citing *United States v. Raines*, 362 U.S. 17, 22 (1960);

*Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 218-219 (1974)

(plaintiff must assert a legally cognizable injury in fact before federal courts have

jurisdiction).  "The essence of a standing question is whether the plaintiff has alleged 'such

a personal stake in the outcome of the controversy as to assure that concrete adverseness

which sharpens the presentation of issues upon which the court so largely depends for the

illumination of difficult constitutional questions[.]' *Baker v. Carr*, 369 U.S. 186, 204, 82

S.Ct. 691, 703 7 L.Ed.2d 663 (1962)."  *Saladin v. City of Milledgeville*, 812 F.2d 687, 690

(11th Cir. 1987); *Harris v. McRae*, 448 U.S. 297, 320 (1981) (same).

The first inquiry concerning standing is whether or not the minimum "case or

controversy" constitutional requirement of Article III has been met.  *Saladin*, 812 F.2d at

690. "To satisfy this 'irreducible' constitutional minimum required for standing, a litigant

must show (1) that he personally has suffered an actual or prospective injury as a result of

the putatively illegal conduct; (2) that the injury can be fairly traced to the challenged

conduct; and (3) that the injury is likely to be redressed through court action." *Id*., citing *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982); *Warth v. Seldin*, 422 U.S. 490, 499 (1975). If any element is lacking, a plaintiff's claim is not viable. In addition, the Supreme Court has established several requirements based on prudential considerations. *Saladin*, 812 F.2d at 690 (internal citations omitted) ("The Supreme Court has also stated that, in addition to these essential constitutional requirements, a court should consider the case in light of three principles which might counsel judicial constraint, referred to as 'prudential' considerations… . Those considerations are (1) whether the plaintiff's complaint falls within the zone of interests protected by the statute or constitutional provision at issue; (2) whether the complaint raises abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches; and (3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties").

In the instant complaint, Calhoun complains of a lack of treatment provided to inmates diagnosed with mental health issues during their confinement at Kilby. Calhoun argues that "these inmates have a right to be treated for their illnesses[.]" *Doc. No. 18* at 5. However, Calhoun lacks standing to assert the constitutional rights of other persons. *Saladin*, 812 F.2d at 690; *Allen v. Wright*, 468 U.S. 737, 751 (1984). The prudential limitation applicable in this case is that a litigant may not assert the legal rights or interests

of another person. With respect to the claims arising from alleged violations of other inmates' constitutional rights, Calhoun is not "asserting [his] … own legal rights and interests [but] rather … the legal rights and interests of third parties." *Saladin*, 812 F.2d at 690. These claims entitle Calhoun to no relief and summary judgment is due to be granted in favor of the defendants.

## C. Conditions

Calhoun complains that during his incarceration at Kilby the facility has been overcrowded and understaffed, causing allegedly unconstitutional conditions. The challenged conditions include a lack of adequate restroom/shower facilities, mold on the floor and walls of the showers, discolored water, unsanitary kitchen utensils and the housing of inmates without classification. Calhoun further complains that inmates with mental health issues are disruptive to his living environment because they scream, bang on boxes and urinate on the floor. The correctional defendants deny that the conditions made the basis of the instant complaint rise to the level of constitutional violations. Warden Billups addresses these claims as follows:

> . . . All inmates received at Kilby are given Mental Health screening on the first day and if any abnormal behavior is noted or the inmate demonstrates phsychological impairment or distress, a Psychologist will conduct a second mental health evaluation. Daily inspections of the dorms and restrooms are conducted by the Shift Supervisors and the Correctional Officers to ensure that they are clean. I am not aware of any mold on the floors and walls of the showers.
>
> Inmate Calhoun claims that the drinking water, ice machine and the bathroom water have been brown as dirt for days at a time and he has the

right to be protected from such unsanitary conditions.  I have not received any complaints about the water being brown.

Inmate Calhoun claims that he suffers from athlete's foot; he was given cream after paying $4.00 to see a Nurse Practitioner and he was charged again after his knee had swollen.  Inmate Calhoun received medical services on January 14, 2014, and was only charged a $4.00 copay one (1) time on January 24, 2014.

Inmate Calhoun claims that the sanitation within the Kitchen is harmful and he became sick after eating in the Kitchen because the utensils he eats with and drinks water with are washed in poor temperatures and the trash barrels sit[] in front of the dish room for the plaintiff to dump his tray. There is no documentation that inmate Calhoun has become sick from eating in the kitchen at Kilby. The dishes are pre-washed, washed, rinsed and sanitized at a temperature of at least 180 degrees or higher. The dining facility and food preparation is reviewed on a monthly basis by a Registered Nurse from the Medical Services Unit. The Alabama Department of Corrections Office of Health Services employs an Environmental Supervisor who makes periodical Food Service Inspection reports on the dining facility. The State of Alabama Health Department also makes unannounced inspections of the dining hall. After the inmates have eaten, they slide their food tray in the open window slot (divided by a wall) and then the inmate leaves the dining hall. Inmate Calhoun is not near the food that is put in the trash barrel.

Inmate Calhoun claims that he is deprived of his rights from an excessive risk of violence and the related problem is understaffing.  Inmate Calhoun alleges that we do not employ enough guards to provide adequate safety for him and as result, there are too many inmates for guards to supervise and control.  Inmate Calhoun claims that inmates argue and fight because tensions among inmates are heightened because of the extreme overcrowding. There have been no reports involving inmate Calhoun and another inmate fighting.  It is a fact that every major correctional institution is over its intended physical capacity. There is a shortage of Correctional Officers throughout the State of Alabama, but we are allocated overtime for Correctional Officers to cover the shortage.

Inmate Calhoun alleges that he has not seen his Classification Specialist and actually doesn't know who his Classification Specialist is. Inmate Calhoun was last seen by his Classification Specialist [in February of] 2014… .

Inmate Calhoun alleges that prison overcrowding at Kilby has led to him being housed with new inmates without use of Classification and Kilby's over population has increased stress, anxiety and has facilitated the spread of

disease, already housing of HIV inmates, as evidenced by the increased accounts of sexual assaults. All inmates that enter Kilby go through the Classification process. When there are a group of people housed in the same area, it could create some stress. To my knowledge, there has been an increase of sexual assaults at Kilby.

*Defs. Ex. C - Doc. No. 29-3* at 1-3.

Defendant Clay responds to the complaint, in relevant part, as follows:

Inmate Calhoun stated in his complaint that there are four showers with only two drains in the showers that has mold on the floor and walls. I, Warden Carl Clay have not received any complaint of mold on the walls or floors in Inmate Calhoun's dorm. Each dorm receives cleaning supplies and has assigned inmates for dorm cleaners that are supervised by Correctional Officers to clean the dorms and maintain the cleaning throughout each shift.

Inmate Calhoun stated in his complaint that only (3) three or (4) toilets are working. All dorms are inspected daily by the Correctional Officer assigned to the dorm and any plumbing or maintenance issues are addressed at that time and repairs are completed in a timely manner.

Inmate Calhoun stated in his complaint that the drinking water, ice machine, and bathroom have been brown as dirt for days. I have not received any complaints that the water has been brown for days.

Inmate Calhoun stated in his complaint that the sanitization in the kitchen is harmful and complained of becoming sick after eating in the kitchen due to utensils being washed in poor temperatures. There are no reports noted that inmate Calhoun had become sick from eating in the kitchen while at Kilby Correctional Facility. All utensils used in the kitchen at Kilby Correctional Facility are run through a dish machine with a temperature of 180 degrees or higher and are pre-washed, washed and sanitized.

Inmate Calhoun stated in his complaint that he has not seen his classification specialist and does not know who his Classification Specialist is. Per the Alabama Department of Corrections Manual, an inmate will have an annual progress review, with the exception of those serving Life Without Parole (LWOP) or Death Sentence. An inmate will have a file review every six (6) months (semi review) unless otherwise indicated, with the exception of those serving a LWOP or Death Sentence. Inmate Leander Calhoun's … most recent progress reviews are dated 2/10/2014; 1/22/2013 and 1/23/2012[.] The progress reviews are conducted with the Inmate and the Classification Specialist, signatures are required… .

Inmate Calhoun stated that the prison is overcrowded and understaffed. The prison is overcrowded but the prison ensures that all posts are covered with Correctional Officers to ensure security, custody and control of the institution.

*Defs. Ex. D - Doc. No. 29-4* at 1-3.

Although overcrowding and under staffing exists in the Alabama prison system, these facts, standing alone, are not dispositive of the issues before this court. Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Id*. at 346. Specifically, it is concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Id*. at 348 (citation omitted). Prison conditions which may be "restrictive and even harsh, [ ] are part of the penalty that criminal offenders pay for their offenses against society" and, therefore, do not necessarily constitute cruel and unusual punishment within the meaning of the Eighth Amendment. *Id*. Conditions, however, may not be "barbarous" nor may they contravene society's "evolving standards of decency." *Id*. at 345-346. "'[T]he Constitution does not mandate comfortable prisons.' *Id*. at 349, 101 S.Ct. at 2400. If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.' *Id*. at 347, 101 S.Ct. at 2399. Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of

16

pain.' *Id*." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). Although the Constitution "does not mandate comfortable prisons . . . neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes*, 452 U.S. at 349). It is well-settled that the conditions under which a prisoner is confined are subject to constitutional scrutiny. *Helling v. McKinney*, 509 U.S. 25 (1993).

A prison official has a duty under the Eighth Amendment to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)); *Helling*, 509 U.S. at 31-32. For liability to attach, the challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to [the inmate's] future health." *Crosby*, 379 F.3d at 1289-1290. To demonstrate an Eighth Amendment violation regarding conditions of confinement, a prisoner must satisfy both an objective and a subjective inquiry. *Farmer*, 511 U.S. at 834. In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation. With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm … exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d 1028-1029. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the inference… . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' … [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety… . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

The living conditions within a correctional facility will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] … [are] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes,* 452 U.S. at 347. "Conditions … alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency… . But conditions

that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Id*. at 347.  To determine whether conditions of confinement constitute cruel and unusual punishment, the court must look to the effect the condition has upon the inmate.  *Id*. at 366.  In a case involving conditions of confinement generally or several different conditions, the court should consider whether the claims together amount to conditions which fall below constitutional standards.  *Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied Hamm v. De Kalb County*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L. Ed. 2d 894 (1986); *see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).  The court's consideration of whether the totality of a plaintiff's claims amount to conditions which fall below applicable constitutional standards is limited by the Supreme Court's admonishment that "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need… .  To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes.  Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson v. Seiter,* 501 U.S. 294, 304-305 (1991) (emphasis in original).

A prison official may likewise be held liable under the Eighth Amendment for acting

with "'deliberate indifference'" to an inmate's health or safety when the official knows that

the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to

take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct.

1970, 1974 (1994).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a "'sufficiently culpable state of mind.'"" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)… . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "The known risk of injury must

be a strong likelihood, rather than a mere possibility before [the responsible official's]

failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533,

1537 (11th Cir. 1990) (citations and internal quotations omitted). As the foregoing makes

clear, "[m]erely negligent failure to protect an inmate … does not justify liability under

section 1983[.]" *Id*.

Despite Calhoun's allegations regarding the conditions present at Kilby, he does not

establish that the challenged conditions denied him the minimal civilized measure of life's

necessities or subjected him to a wanton and unnecessary infliction of pain. *Wilson*, 501

U.S. at 298-299; *Rhodes*, 452 U.S. at 347. The conditions referenced by Calhoun, though

uncomfortable, inconvenient, unpleasant and objectionable, were not so extreme as to

20

violate the Constitution.  *See Baird*, 926 F.2d at 1289.  Furthermore, Calhoun fails to demonstrate deliberate indifference or reckless disregard by the defendants with respect to his health or safety relative to these conditions.  Specifically, he does not identify any particular condition of which the defendants were aware from which an inference could be drawn that a substantial risk of serious harm existed.  The record is also devoid of any evidence showing that the defendants drew the requisite inference. Consequently, summary judgment is due to be granted in favor of the defendants on the plaintiff's claims attacking the conditions at Kilby.  *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Carter*, 352 F.3d at 1349-1350.

### D.  MEDICAL CO-PAYMENT

Calhoun appears to challenge the assessment of a co-payment for partial payment of costs attendant to medical treatment provided by a nurse practitioner for athlete's foot and a swollen knee.  *Doc. No. 18* at 5.[4]

The charging of a co-payment for medical treatment provided to an inmate, standing alone, does not violate the Constitution.  The simple fact that Calhoun is charged a nominal fee or co-payment for medical treatment does not in any way deprive him of a protected right, privilege or immunity.  *Shapley v. Nevada Board of State Prison Commissioners*,

---

[4]The Alabama Department of Corrections adopted the medical co-payment policy, initially set forth in Administrative Regulation No. 601, which is now contained in Administrative Regulation No. 703.  *See Defs.' Exh. F - Doc. No. 29-6* at 2-12.  The medical co-payment is charged to the inmate and collected by correctional officials.  *Id.* at 8.  However, "all inmates [must] have access to healthcare regardless of their ability to pay.  No inmate shall be denied care because of a record of non-payment or current inability to pay for health services." *Id.* at 2.

766 F.2d 404, 408 (9th Cir. 1985) (imposition of fee for medical treatment provided to an inmate does not amount to a constitutional violation); *Jones v. Corizon, et al.*, 2015 WL 5013954 at *17 (M.D.Ala. 2015), affirmed on appeal February 18, 2016 (charging of co-payment for treatment provided each time inmate seeks treatment through the sick call process does not violate the Constitution); *Bester v. Wilson*, 2000 WL 1367984 at *8 (S.D. Ala. 2000)("[T]he charging of a fee to prisoners for medical treatment from their [available] funds has been held to be constitutional when challenged on several due process and Eighth Amendment grounds.").   The record is devoid of evidence indicating that Calhoun was denied medical treatment due to his inability to pay the fee; instead, the evidentiary materials establish that Calhoun received medical treatment regardless of whether he had the ability to provide a co-payment.   Since Calhoun has failed to allege a violation of his constitutional rights with respect to the assessment/collection of fees associated with medical treatment, the defendants are entitled to summary judgment on this claim.

### E.  CLASSIFICATION

Calhoun alleges that at the time he filed the amended complaint "Plaintiff haven't seen his classification specialist and actually don't know his classification specialist." *Doc. No. 18* at 7.  The defendants submitted a classification summary indicating that Calhoun underwent a classification review in February of 2014 and remained in medium custody

after such review.  *Defs.' Exh. C - Doc. No. 29-3* at 4.  Both Calhoun and his classification

specialist signed the classification summary.

To the extent that Calhoun challenges the validity of his custody classification, this

claim provides no basis for relief.  The law is well settled that

> there are only two instances when a prisoner may be deprived of a due
> process liberty interest under § 1983:  The first is when a change in the
> prisoner's conditions of confinement is so severe that it essentially exceeds
> the sentence imposed by the court.  The second situation is when the state
> has consistently bestowed a certain benefit to prisoners, usually through
> statute or administrative policy, and the deprivation of that benefit imposes
> atypical and significant hardship on the inmate in relation to the ordinary
> incidents of prison life.  *Kirby v. Siegelman*, 195 F.3d 1285, 1290-91 (11th
> Cir. 1999) (quotation omitted) (citing *Sandin v. Conner*, 515 U.S. 472, 484,
> 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

*Morales v. Chertoff*, 212 F. App'x 888, 890 (11th Cir. 2006).

Calhoun's claim fails to implicate either of these situations because his assigned

custody classification is not "so severe that it essentially exceeds the sentence imposed by

the court," and the administrative regulations governing classification "do not bestow a

benefit vis-a-vis the custody classification, the deprivation of which would result in an

'atypical and significant hardship' on [Calhoun].  *See Kirby*, 195 F.3d at 1290-91; *see also*

*Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir.1994) (in the context of a claim based on a

custody classification, holding that the U.S. Constitution affords no liberty interest in a

prisoners custody classification); *cf. Meachum v. Fano*, 427 U.S. 215, 224-26, 96 S.Ct.

2532, 49 L.Ed.2d 451 (1976) (holding that a prisoner does not have a liberty interest in an

assignment to any particular prison, regardless of whether the conditions of one prison are 'much more disagreeable' than another)." *Morales*, 212 F. App'x at 890.

As is clear from the foregoing, a state inmate has no constitutionally protected interest in his classification status. *Sandin*, 515 U.S. at 484; *Morales*, 212 F. App'x at 890; *Slezak*, 21 F.3d at 594. Consequently, correctional officials may assign Calhoun to any classification level without implicating the protections of due process. For the foregoing reasons, Calhoun is due no relief on his claim challenging the constitutionality of the procedures undertaken in determining his classification level.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before February 20, 2017 the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, on this the 6th day of February, 2016.

/s/ Susan Russ Walker
Susan Russ Walker
Chief United States Magistrate Judge